IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN MICHAEL WATERMAN,

      Plaintiff,

      v.                              CASE NO.  21-3097-SAC

MICHELLE TIPPIE, et. al,

      Defendants.

## MEMORANDUM AND ORDER
## AND ORDER TO SHOW CAUSE

Plaintiff Brian Michael Waterman is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given an opportunity to file a proper amended complaint to cure the deficiencies.

## I.  Nature of the Matter before the Court

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is detained at the Cherokee County Jail in Columbus, Kansas ("CCJ").  The Court granted Plaintiff leave to proceed *in forma pauperis*.

Plaintiff alleges in Count I of his Complaint that on January 29, 2021, Degroot, Tippie and Groves gave him a misconduct sanction of 15 days without a disciplinary hearing.  Plaintiff received the misconduct report for having a jailer pass a love letter to Sgt. Mandi Montanye.  Plaintiff alleges that Defendants failed to comply with the due process requirements set forth in *Wolff v. McDonnell*, 418 U.S. 539 (2005).

Plaintiff alleges in Count II that on February 1, 2021, Sgt. Macafee and DO Degroot placed Plaintiff in a restraint chair to punish him for not having a shower for four days or more in

segregation.  Plaintiff claims that he was only allowed out of his cell to shower during second shift, because Sgt. Montanye was on first shift.  Plaintiff acknowledges that he covered the camera in his cell to force Sgt. Macafee to come down so that he could speak with her about his shower situation.  Plaintiff claims that they refused to listen and cleaned the camera, so Plaintiff covered the camera again.  Plaintiff was then placed in a restraint chair for almost two hours.

As Count III, Plaintiff alleges "excessive force with handcuffs."  (Doc. 1, at 11.)  Plaintiff alleges that he was allowed to cover his night light in his cell for over a month.  On March 25, 2021, Sgt. Nida walked through the pod after lights were out and said nothing about the light. Plaintiff claims that the next day at lockdown, three jailers came to Plaintiff's cell "to make it seem like [he was] out of control" and jailer Bass took down the manilla envelope Plaintiff had covering his light.  (Doc. 1, at 8.)  Plaintiff states that Plaintiff was "verbally cussing at him."  *Id*. Plaintiff claims that the jailers left and then returned to tell Plaintiff he was going to segregation. Plaintiff alleges that he "turned to put [his] seeing glasses on" causing jailer Bass to aggressively shoot into the cell and get into Plaintiff's face.  Handcuffs were placed on Plaintiff and the left one was extremely tight.  As they were escorting Plaintiff, they stopped at the door waiting for it to open.  Plaintiff turned as he was speaking to shift supervisor Biggerstaff.  Bass grabbed in between the handcuffs and yanked Plaintiff out of the pod "slinging [him] around" and pinning him to the wall while yelling at him.  Bass pushed Plaintiff through the doors, ramming his head into the corner and cracking Plaintiff's glasses.  Bass pushed Plaintiff through the last door with such force that he knocked Plaintiff down and fell on top of him.

Plaintiff claims that when the handcuffs were removed there was a half inch indention in his skin.  Plaintiff did not receive any medication or ice packs until fifteen hours later when he was given IBU and an ice pack.  Plaintiff alleges that Bass used excessive force and Biggerstaff

failed as a supervisor to control Bass.  Plaintiff claims that medical provider Draeger "allegedly refused to come examine [Plaintiff's] wrist or send [him] for x-rays."  (Doc. 1, at 9.)

Plaintiff alleges in Count IV that Tippie has ordered jailers to not allow inmates to use the restroom in their cells during mealtimes.  The cell doors are locked and there is no restroom in the housing units.  Plaintiff alleges that in the mornings it takes 56 minutes to pick up trays. Plaintiff claims that he has "been forced to urinate in the pod trash can."  (Doc. 1, at 10.) Plaintiff alleges that this is done to punish inmates.

Plaintiff names as Defendants:  Michelle Tippie, Captain; Thomas Degroot, Disciplinary and PREA Coordinator; April Macafee, Sergeant; David M. Groves, Sheriff; Board of Commissioners of Columbus, Kansas; Cordell Bass; Breah Biggerstaff; and Elesha Draeger. Plaintiff's request for relief seeks $500,000 in declaratory damages; $500,000 in punitive damages; $500,000 in nominal damages; $150,000 in monetary damages; and injunctive relief in the form of cameras in the rotunda area, lights on, restrooms installed in every pod or styrofoam trays and cups passed out during all three meals.  (Doc. 1, at 12.)

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and

*Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Due Process

Plaintiff claims that he was placed in segregation without receiving a disciplinary hearing after he had a love letter delivered to a sergeant at the CCJ. He also claims that he was placed in a restraint chair after he failed to shower for four days and covered the camera in his cell twice. The Supreme Court in *Bell v. Wolfish* noted that inmates may claim the protection of the Due Process Clause to prevent additional deprivations of life, liberty, or property without due process of law, and that "pretrial detainees . . . retain at least those constitutional rights . . . enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). But, "[a] detainee simply does not possess the full range of freedoms of an unincarcerated individual." *Id*. at 546. Although the guarantee against deprivations of liberty without due process of law applies to prison inmates, "prisoners' due process rights are defined more narrowly." *Marshall v. Morton*, 421 F. App'x

832, 837 (10th Cir. 2011) (unpublished) (quoting *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005)).   In the prison context, liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).  The Tenth Circuit in *Marshall* held that Marshall's loss of privileges did not impose "atypical and significant harship[s] on [him] in relation to the ordinary incidents of prison life." *Id*. (quoting *Sandin*, 515 U.S. at 484).

The Supreme Court has held that "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivations of liberty without due process of law . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Pretrial detainees, "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id*. (citations omitted).   "A person lawfully committed to pretrial detention has not been adjudged guilty of any crime . . . [and] has had only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Id*. (citations omitted). The government may "detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. at 536–37.

To determine when restrictions pass, as  a matter of law, from constitutionally acceptable to constitutionally impermissible, a court must ask two questions.  *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013).  "First, we must ask whether an 'expressed intent to punish on the

part of detention facility officials' exists" and "[i]f so, liability may attach. If not, plaintiff may still prove unconstitutional punishment by showing the restriction in question bears no reasonable relationship to any legitimate governmental objective." *Id*. (citing *Bell*, 441 U.S. at 538–39).

The Government has "legitimate interests that stem from its need to manage the facility in which the individual is detained." *Bell*, 441 U.S. at 540. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id*. "[I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id*. The Supreme Court has warned that these decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id*. at 540, n.23 (citations omitted).

Plaintiff has not alleged that Defendants exaggerated their response when they segregated him after he sent a love letter to a sergeant at the jail or when they restrained him after he continued to cover the camera in his cell. Plaintiff should show good cause why his claim should not be dismissed or amend his complaint to allege that the restriction is not reasonably related to the institution's interest in maintaining jail security.

### 2. Excessive Force

Plaintiff alleges that excessive force was used when he was handcuffed too tightly and pushed through the doors and slung around while being escorted to segregation after he covered his night light with a manilla envelope.  "Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted).  Claims of mistreatment while in state pretrial confinement are not covered by the Fourth Amendment or the Eighth Amendment. *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). They are assessed under the Fourteenth Amendment.  *Id*.

The Court held in *Kingsley* held that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020)  (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015); *see also Colbruno*, 928 F.3d at 1163 ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee.").

Not every isolated battery or injury to an inmate amounts to a federal constitutional violation.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

Plaintiff has not alleged wrongdoing that is objectively harmful enough to establish a constitutional violation.  In *Snyder v. Spilde*, the court found that:

> Merely grabbing and twisting Mr. Snyder's arms does not allege a constitutional violation.  *See e.g., Norton v. The City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (dismissing claim in which prison guards were alleged to have injured prisoner by grabbing him around his neck and twisting it because the guards' actions were not objectively harmful enough to establish a constitutional violation); *Reed v. Smith*, No. 97-6341, 1999 WL 345492, at *4 (10th Cir. 1999) (dismissing excessive force claim based on allegations that prison officials grabbed inmate, tried to ram him into a wall, and dragged him while walking him through the prison); *Marshall*, 415 Fed. App'x at 853–54 (dismissing excessive force claim based on allegations that corrections officer dug his fingernails into prisoner's arm without cause to do so resulting in redness and bruising).  *Accord De Walt v. Carter*, 224 F.3d 607, 610–11 (7th Cir. 2000) (holding that shoving a prisoner into a doorframe, which resulted in bruising on his back, did not state a constitutional violation); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (holding that bumping, grabbing, elbowing, and pushing a prisoner was "not sufficiently serious or harmful to reach constitutional dimensions."); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (pushing cubicle-cell wall onto prisoner's leg, causing bruises, was insufficient use of force to state a constitutional violation); *Olson v. Coleman*, 804 F. Supp. 148, 149–50 (D. Kan. 1982) (single blow to prisoner's head while escorting him into prison, causing contusion, was de minimis use of force not repugnant to conscience of mankind).

*Snyder v. Spilde*, No. 15-cv-2169-GPG, 2016 WL 1059612, at *3–4 (D. Colo. March 17, 2016).

Plaintiff acknowledged that he covered his light, he was cussing at the officials when they came into his cell, that he turned to grab his glasses, and that he turned to talk to a sergeant while he was being escorted to segregation.  Plaintiff alleges that his handcuffs were too tight and left an indention on his wrist.  Plaintiff does not claim that he made the officers aware of this fact or asked for the handcuffs to be loosened.  Plaintiff should show good cause why his excessive force claim should not be dismissed.

### 3.  Medical Claims

Plaintiff claims that there was a fifteen-hour delay in receiving medication and an ice pack for his wrists.  "[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component."  *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies).  To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."  *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id*. at 990 (citation omitted).  The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation."  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted).  "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'"  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).  Plaintiff's claim that he had an indention in his wrist after the handcuffs were removed does not show a lifelong handicap, permanent loss, or considerable pain.  As noted previously, Plaintiff does not allege that he sought to have his handcuffs loosened or notified the officials that they were too tight.

Plaintiff also fails to satisfy the subjective prong.  The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).  Plaintiff has failed to show that the officials were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.  Plaintiff should show good cause why his medical claim should not be dismissed.

### 3.  Conditions of Confinement

Plaintiff alleges that inmates are not allowed to use the restrooms in their cells during mealtime.  The Tenth Circuit has held that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims."  *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see also Hooks v. Atoki*, 983 F.3d 1193, 1203–04 10th Cir. 2020) (declining to extend *Kingsley's* exclusively objective standard for pretrial detainees' excessive force claims to Fourteenth Amendment deliberate indifference claims).  A prison official violates the Eighth Amendment when two requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Id*.  To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm."  *Id*.; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97,

103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."  *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.  Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety.  *Id*.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"  *Id*.  It is not enough to establish that the official should have known of the risk of harm.  *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered."  *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  "While no single factor controls . . . the length of exposure to the conditions is often of prime importance."  *Id*.  As the severity of

the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm." Plaintiff has also failed to allege "deliberate indifference" by any defendant. Plaintiff should show good cause why his claim should not be dismissed.

## IV.  Motions

### 1.  Motion to Supplement (Doc. 9)

Plaintiff seeks to add defendants and claims for "ongoing constitutional violations." He seeks to add Amy Jarrett as a defendant based on an encounter he had with her on June 17, 2021. Plaintiff claims that when he was speaking to another inmate, Jarrett told him "to keep it up, and she would lock [him] down." (Doc. 9, at 1.) When Plaintiff responded "I don't care lock me down," she locked him down for 48 hours. Plaintiff had another altercation with Jarrett on June 22, 2021, when he went to the med pass and showed Jarrett his mouth twice and then stuck his tongue out and moved his tongue all around. *Id*. at 2. Jarrett threatened to lock Plaintiff down for disrespect, and again Plaintiff told her he didn't care. Plaintiff then started talking to another inmate when Jarrett told him if he had anything to say about her he could say it to her face. Plaintiff replied that he wasn't talking to her. Plaintiff was locked down for a second time and he said Jarrett was smiling at him. Plaintiff alleges that he was not allowed to appeal his lockdown. Plaintiff also seeks to add Sgt. Montayne as a defendant, alleging that she upheld the

lockdown after viewing the video of the incident. He seeks to add Elders as a defendant, alleging that he backed up Jarrett on the lockdown.

Plaintiff also seeks to add a claim against jailer Peters and Sgt. Macafee based on another incident occurring on June 17, 2021. Plaintiff claims that he was not allowed to use the restroom at breakfast because he was locked out of his cell. Plaintiff claims that breakfast is called at 7:00 am and they are supposed to have thirty minutes to pass out and pick up trays. Plaintiff claims that on that day the trays did not get picked up until 7:55 am, "so [he] urinated by the pod door, well after the 30 minute mark." *Id*. at 2. Plaintiff alleges that he was locked down for the incident.

Plaintiff has set forth unrelated claims in his current Complaint. Plaintiff's motion to supplement seeks to add more unrelated claims. The Court denies the motion, but will give Plaintiff an opportunity to file an amended complaint which includes all of his properly-joined claims and defendants. Plaintiff must follow Rules 20 and 18 of the Federal Rules of Civil Procedure when filing an amended complaint. Rule 20 governs permissive joinder of parties and pertinently provides:

> (2) ***Defendants***. Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc*., 160 F. Supp. 2d 1210,

1225 (D. Kan. 2001) (citation omitted).  The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]."  *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act.  *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant.  Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact.  He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim.  Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately).  In any amended complaint, Plaintiff should set forth the transaction(s) or occurrence(s) which he intends to pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly-joined defendants and occurrences.  Plaintiff must

allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

### 2. Motion to Stop Continued Harassment and Mistreatment (Doc. 11)

Plaintiff claims that despite all of his pending civil suits, Defendants still continue to harass and mistreat him.  Plaintiff claims that he continues to "endure tribulation by the courts and defendants." (Doc. 11, at 1.)  Plaintiff claims that it is to the point where he cannot get medical care, cannot file grievances or medical requests, and is being placed in a pod with predominantly black inmates to cause him bodily harm over his white pride. Plaintiff also alleges that his meals have been cut down, and he was not allowed to sew his socks.  Plaintiff claims that Peters refused to unshackle Plaintiff and left him in full restraints while he was being booked into the CCJ.  Plaintiff claims that when he went to segregation McDaniels deliberately left all of Plaintiff's commissary and property in his cell with the door open.  Plaintiff claims he was denied use of the gym for six days and could only have his inhaler at 6:00 am and 8:00 pm. Plaintiff alleges that he is being denied use of the inmate request system due to his continued abuse of the system.  Although Plaintiff claims that he has been unable to use the inmate request system since 2020, he attaches two grievances he filed in June 2021, and two grievances he filed in July 2021.

Plaintiff's motion is basically a list of his on-going disagreements with staff at the CCJ. Similar complaints have been previously denied by the Court.  *See* Doc. 10 (denying motion seeking to be housed separately from Sedgwick County detainees).  Plaintiff is cautioned to refrain from filing motions regarding his day-to-day grievances with staff at the CCJ when they are unrelated to the claims in this case.  Plaintiff's motion is denied.

### 3.  Motion to Fix the Law Library Again and to Stop Taking it Away (Doc. 15)

Plaintiff claims that in 2018 the Defendants took the search engine away for two years. Plaintiff also claims that from January to February 2021, Defendants took the law library completely away during pretrial.  Plaintiff alleges that Defendants have again taken and disabled the keyboard, which disables the entire library.

As a detainee, Plaintiff is "entitled to meaningful, but not total or unlimited access to the courts." *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1107 (10th Cir. 2005). To state a claim for relief, Plaintiff "must demonstrate actual injury from interference with his access to the courts" by showing that defendants "frustrated or impeded his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (citing *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim."  *Lewis*, 518 at 354.  Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement."  *Id.* at 355.  "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  *Id*.  (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

Plaintiff has not alleged that he was prevented from accessing the courts or that he suffered an actual injury due to the limitations on the use of the law library.  If Plaintiff believes

he has a court access claim, he should file an action after exhausting the facility's grievance procedures.  Plaintiff's current motion is denied.

### 4.  Motion to Have Sgt. Montanye be Allowed to do her Job (Doc. 17)

Plaintiff alleges that Sgt. Montanye is not allowed to be around Plaintiff "over a letter." Plaintiff alleges that he is not allowed to speak with her and other jailers are taking advantage of the situation because he is unable to report them to Montanye.  Plaintiff alleges that he needs access to a sergeant and she is the only sergeant on second shift.   Based on the nature of the relief sought, the Court construes this as a motion for a preliminary injunction.

Plaintiff has failed to establish any of the required factors for a preliminary injunction. The Court will only grant a preliminary injunction after the Plaintiff has shown: (1) a substantial likelihood of success on the merits; (2) he will suffer irreparable harm in the absence of an injunction; (3) his threatened injury outweighs the harm a preliminary injunction may cause the opposing party; and (4) the injunction would not be adverse to the public interest. *Beltronics USA, Inc. v. Midwest Inventory Distrib.*, LLC, 562 F.3d 1067, 1070 (10th Cir. 2009). Further, there must be a relationship between the injury claimed in the motion and the conduct asserted in the complaint. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). Courts are cautioned against granting mandatory preliminary injunctions—those requiring affirmative action by the nonmoving party—as they are "an unusual form of relief and one that must not be granted without heightened consideration" of the four factors. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).

Plaintiff's complaint in this motion is completely unrelated to his claims in this case and cannot serve as proper grounds for granting a preliminary injunction in this action. Further, even after considering the substance of Plaintiff's allegations, the Court finds Plaintiff has failed to

plead any facts showing irreparable harm in the absence of an injunction. *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) (holding harm is "irreparable" when monetary relief after a full trial would be inadequate.) Thus, Plaintiff's motion is denied.

### 5. Motion to Use Kiosk (Doc. 18)

Plaintiff claims that his use of the kiosk system has been limited and "he has several grievances on this matter."  (Doc. 18, at 1.)  Plaintiff does not state that he has completed the grievance process regarding this claim.  He argues that he has had to wait "days almost a week" for paper grievances when he verbally requests them.  *Id*.  Plaintiff alleges that he was not allowed to request a disciplinary hearing or appeal his write-ups through the kiosk system, and his verbal requests were denied.  *Id*.  Plaintiff alleges that his medical requests must go through Captain Tippie.  *Id*. at 2.  Plaintiff asks to have his kiosk requests immediately restored.  *Id*.

Plaintiff has not shown he is entitled to injunctive relief—he has failed to plead any facts showing irreparable harm in the absence of an injunction. Plaintiff acknowledges that he is able to submit paper grievances and claims that he has submitted several grievances regarding this matter.  Plaintiff should finish the grievance process and then file an action if he believes his First Amendment rights have been violated.  Although Plaintiff alleges that there is a delay in submitting paper grievances, he acknowledges that they are an option.  *See Hubbard v. Holt*, Case No. 5:17-cv-05097, 2017 WL 3526670, at *4 (W.D. Ark. Aug. 16, 2017) (finding the constitution was not implicated where plaintiff was denied the right to use the electronic kiosk to submit grievances and requests but was still permitted to submit grievances in paper form); *Mason v. Bolton*, Civil Action No. 3:12-CV-P642-H, 2013 WL 1668248, at *3 (W.D. Ky. April 17, 2013) (finding plaintiff failed to state a claim of denied access to courts where he failed

to allege that a non-frivolous claim had been lost or rejected or was currently being prevented due to his inability to use the law kiosk or to have copies).  Plaintiff's motion is denied.

## V.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[1] Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Supplement (Doc. 9) is **denied.**

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Stop Continued Harassment and Mistreatment (Doc. 11) is **denied.**

---

[1] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (21-3097-SAC) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Fix the Law Library Again and to Stop Taking it Away (Doc. 15) is **denied.**

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Have Sgt. Montanye be Allowed to do her Job (Doc. 17) is **denied.**

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Use Kiosk (Doc. 18) is **denied.**

**IT IS FURTHER ORDERED THAT** Plaintiff is granted until **October 20, 2021,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **October 20, 2021**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated September 23, 2021, in Topeka, Kansas.**

**s/ Sam A. Crow**
**Sam A. Crow**
**U.S. Senior District Judge**
