**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**BRIAN MICHAEL WATERMAN,**

      **Plaintiff,**

      **v.**                             **CASE NO.  21-3097-SAC**

**MICHELLE TIPPIE, et. al,**

      **Defendants.**

**MEMORANDUM AND ORDER**
**AND ORDER TO SHOW CAUSE**

Plaintiff Brian Michael Waterman is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein.

**I.  Nature of the Matter before the Court**

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  At the time of filing, Plaintiff was detained at the Cherokee County Jail in Columbus, Kansas ("CCJ"). Plaintiff is currently incarcerated at the El Dorado Correctional Facility. [1]  The Court granted Plaintiff leave to proceed *in forma pauperis*.

Plaintiff alleges in Count I of his Amended Complaint that on January 29, 2021, Degroot, Tippie and Groves gave him a misconduct sanction of 15 days in segregation without a disciplinary hearing.  Plaintiff received the misconduct report for having a jailer pass a love letter to Sgt. Mandi Montanye.  Plaintiff alleges that Defendants failed to comply with the due process requirements and placed him in segregation for 15 days "for violating jail rules."  (Doc. 24–1, at 2.)

---

[1]  *See* https://kdocrepository.doc.ks.gov/kasper/search/results (last visited Jan. 31, 2022).

Plaintiff alleges in Count II that on February 1, 2021, Sgt. Macafee and DO Degroot placed Plaintiff in a restraint chair to punish him for not having a shower for four days or more in segregation. Plaintiff claims that he was only allowed out of his cell to shower during second shift, because Sgt. Montanye was on first shift. Plaintiff acknowledges that he covered the camera in his cell to force Sgt. Macafee to come down so that he could speak with her about his shower situation. Plaintiff claims that they refused to listen and cleaned the camera, so Plaintiff covered the camera again. Plaintiff was then placed in a restraint chair for almost two hours. Plaintiff claims he "voluntarily sat in the chair as directed." *Id*. at 3.

As Count III, Plaintiff alleges pretrial detainee punishment and "excessive force with handcuffs and physical force." (Doc. 24, at 5.) Plaintiff alleges that on March 26, 2021, supervisor Biggerstaff and Jailer Bass "came to [his] cell and took a 9 x 12 envelope off [his] light" and he "had words with Bass over it." *Id*. Plaintiff alleges that they left, and Plaintiff covered his light again because he had verbal permission to do so. Plaintiff alleges that he informed jailers that he had permission and Bass came back "acting hostile and aggressive." (Doc. 24–1, at 5.) Plaintiff alleges that he was told to cuff up and he grabbed his glasses off the table. *Id*. Plaintiff claims that Bass rushed at Plaintiff, getting in his face and seeking confrontation. *Id*. at 5–6.

Plaintiff alleges that as he was walking with his hands cuffed behind his back, he began complaining about the cuffs being too tight. *Id*. at 6. While Plaintiff was being escorted, he stopped while waiting for the door to open and turned to tell Biggerstaff that the handcuffs were too tight. Plaintiff alleges that when the door opened Bass raised Plaintiff's arms up and yanked him out the door backwards "slinging [him] around into the wall, then running through the door into the gym wall ramming [his] head into the corner breaking [his] glasses, and with his hands

tightening [Plaintiff's] cuffs all the way through the notches." *Id*. Plaintiff alleges that he was thrown through the door with such force that Plaintiff fell face firsts and Bass fell on top of him. *Id*. Plaintiff alleges that when his cuffs were removed, he had a quarter-inch indention in his skin. Plaintiff did not receive any medication or ice packs until fifteen hours later when he was given IBU and an ice pack. Plaintiff alleges that he was not seen by a nurse until March 31.

Plaintiff alleges in Count IV that from November 2020 through March 28, 2021, Tippie ordered jailers to not allow inmates to use the restroom in their cells during mealtimes. The cell doors are locked and there is no restroom in the housing units. Plaintiff alleges that in the mornings it takes 56 minutes to pick up trays. Plaintiff claims that he has "been forced to urinate in the pod trash can, or urinate by the pod door which [he] was locked down for." *Id*. at 7. Plaintiff alleges that the trays are supposed to be picked up within 30 minutes. Plaintiff alleges that being denied a restroom for this amount of time is punishment.

Plaintiff names as Defendants: Michelle Tippie, Captain; Thomas Degroot, Disciplinary and PREA Coordinator; April Macafee, Sergeant; David M. Groves, Sheriff; Board of Commissioners of Columbus, Kansas; Cordell Bass; and Elesha Draeger. Plaintiff's request for relief seeks $500,000 in punitive damages; $500,000 in declaratory damages; $500,000 in compensatory damages; $500,000 in monetary damages; $500,000 in nominal damages; and injunctive relief in the form of new glasses, cameras in the rotunda area, and restrooms built in the pods or the doors not to be locked during meals. (Doc. 24, at 6.)

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised

Case 5:21-cv-03097-SAC   Document 30   Filed 02/01/22   Page 4 of 15

claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the

plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Due Process

Plaintiff claims that he was placed in segregation without receiving a disciplinary hearing after he had a love letter delivered to a sergeant at the CCJ. He also claims that he was placed in a restraint chair after he failed to shower for four days and covered the camera in his cell twice. Plaintiff also claims that he was punished for having an envelope covering his camera and was denied the restroom during meals.

The Supreme Court has held that "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivations of liberty without due process of law . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Pretrial detainees, "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* (citations omitted). "A person lawfully committed to pretrial detention has not been adjudged guilty of any crime . . . [and] has had only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Id.* (citations omitted). The government may "detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536–37.

To determine when restrictions pass, as  a matter of law, from constitutionally acceptable to constitutionally impermissible, a court must ask two questions. *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013). "First, we must ask whether an 'expressed intent to punish on the part of detention facility officials' exists" and "[i]f so, liability may attach. If not, plaintiff may still prove unconstitutional punishment by showing the restriction in question bears no reasonable relationship to any legitimate governmental objective." *Id.* (citing *Bell*, 441 U.S. at 538–39).

The Government has "legitimate interests that stem from its need to manage the facility in which the individual is detained." *Bell*, 441 U.S. at 540. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* "[I]n addition to

ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id*.  The Supreme Court has warned that these decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."  *Id*. at 540, n.23 (citations omitted).

Plaintiff has not alleged that Defendants exaggerated their response when they segregated him after he sent a love letter to a sergeant at the jail or when they restrained him after he continued to cover the camera in his cell.  Plaintiff has failed to allege that the restrictions are not reasonably related to the institution's interest in maintaining jail security. Plaintiff should show good cause why his claim should not be dismissed

**2. Excessive Force**

Plaintiff alleges that excessive force was used when he was handcuffed too tightly and pushed through the doors and slung around while being escorted to segregation after he covered his night light with a manilla envelope.  "Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force."  *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted).  Claims of mistreatment while in state pretrial confinement are not covered by the Fourth Amendment or the Eighth Amendment. *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). They are assessed under the Fourteenth Amendment.  *Id*.

The Court held in *Kingsley* that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020)  (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015); *see also Colbruno*, 928 F.3d at 1163 ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee.").

Not every isolated battery or injury to an inmate amounts to a federal constitutional violation.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

Plaintiff has not alleged wrongdoing that is objectively harmful enough to establish a constitutional violation.  In *Snyder v. Spilde*, the court found that:

> Merely grabbing and twisting Mr. Snyder's arms does not allege a constitutional violation.  *See e.g., Norton v. The City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (dismissing claim in which prison guards were alleged to have injured prisoner by grabbing him around his neck and twisting it because the guards' actions were not objectively harmful enough to establish a constitutional violation); *Reed v. Smith*, No. 97-6341, 1999 WL 345492, at *4 (10th Cir. 1999) (dismissing excessive force claim based on allegations that prison officials grabbed inmate, tried to ram him into a wall, and dragged him while walking him through the prison); *Marshall*, 415 Fed. App'x at 853–54 (dismissing excessive force claim based on allegations that corrections officer dug his fingernails into prisoner's arm without cause to do so resulting in redness and bruising).  *Accord De Walt v. Carter*, 224 F.3d 607, 610–11 (7th Cir. 2000) (holding that shoving a prisoner into a doorframe, which resulted in bruising on his back, did not state a

> constitutional violation); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (holding that bumping, grabbing, elbowing, and pushing a prisoner was "not sufficiently serious or harmful to reach constitutional dimensions."); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (pushing cubicle-cell wall onto prisoner's leg, causing bruises, was insufficient use of force to state a constitutional violation); *Olson v. Coleman*, 804 F. Supp. 148, 149–50 (D. Kan. 1982) (single blow to prisoner's head while escorting him into prison, causing contusion, was de minimis use of force not repugnant to conscience of mankind).

*Snyder v. Spilde*, No. 15-cv-2169-GPG, 2016 WL 1059612, at *3–4 (D. Colo. March 17, 2016).

Plaintiff acknowledged that he covered his light, he was cussing at the officials when they came into his cell, that he turned to grab his glasses, and that he turned to talk to a sergeant while he was being escorted to segregation.[2]   Plaintiff has not alleged wrongdoing that is objectively harmful enough to establish a constitutional violation.  Plaintiff should show good cause why his excessive force claim should not be dismissed for failure to state a claim.

### 3. Medical Claims

Plaintiff claims that there was a fifteen-hour delay in receiving medication and an ice pack for his wrists.  "[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component."  *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies).  To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."  *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 990 (citation omitted).  The "negligent failure to

---

[2] Plaintiff alleged in his original complaint that Plaintiff "was verbally cussing" at the officials when they came to his cell.  (Doc. 1, at 8.)

provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).  Plaintiff has not shown that his medical need was sufficiently serious.

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted).  "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).  Plaintiff's claim that he had an indention in his wrist after the handcuffs were removed does not show a lifelong handicap, permanent loss, or considerable pain.

Plaintiff also fails to satisfy the subjective prong.  The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).  Plaintiff has failed to show that the officials were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.  Plaintiff should show good cause why his medical claim should not be dismissed.

### 4.  Conditions of Confinement

Plaintiff alleges that inmates are not allowed to use the restrooms in their cells during mealtime.  The Tenth Circuit has held that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir.

2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see also Hooks v. Atoki*, 983 F.3d 1193, 1203–04 10th Cir. 2020) (declining to extend *Kingsley's* exclusively objective standard for pretrial detainees' excessive force claims to Fourteenth Amendment deliberate indifference claims).  A prison official violates the Eighth Amendment when two requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Id.*  To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm."  *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."  *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  *Farmer*, 511 U.S. at 834.  Prison officials must have a "sufficiently culpable state of mind," and

in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm." Plaintiff has also failed to allege "deliberate indifference" by any defendant. Plaintiff should show good cause why his claim should not be dismissed.

## IV. Request for Relief

Plaintiff's request for injunctive relief is moot. Plaintiff is no longer confined at the CCJ. Plaintiff is currently confined at the El Dorado Correctional Facility. Because Plaintiff's request relates solely to alleged wrongdoing on the part of CCJ employees, the Court would be

unable to provide Plaintiff with effective relief and his requests for injunctive relief are moot. Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies.  *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).  "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing."  *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*.  Consequently, "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."  *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."  *O'Shea v. Littleton*, 414 U.S. 488, 495 1974).  The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement.  *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot); *see also Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015) (unpublished) (holding that "RLUIPA claims regarding prison conditions become moot if the inmate plaintiff is released from custody.") (citations omitted).

The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to plaintiff. Because Plaintiff is no longer incarcerated at CCJ, his claims for injunctive relief are moot and subject to dismissal.

Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury.  Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).

Plaintiffs seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).   Plaintiff presents no plausible basis for a claim of punitive damages because he alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind.  Plaintiff's request for punitive damages is subject to dismissal.

## V.  Response Required

Plaintiff is required to show good cause why his Amended Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the Court's deadline may result in dismissal of this action without prior notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **February 18, 2022**, in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated February 1, 2022, in Topeka, Kansas.**

**s/ Sam A. Crow**
**Sam A. Crow**
**U.S. Senior District Judge**